ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOEL COLBERT, <br> *et ux* GAYLE COLBERT, <br><br> Plaintiffs, <br><br> v. <br><br> LONE STAR PARK AT GRAND PRAIRIE <br> f/k/a a/k/a MBLS INC., LSRPI, INC., <br> LONE STAR RACE PARK LTD., <br> LONE STAR RACETRACK INC. <br> LONE STAR PARK, GRAND PRAIRIE <br> SPORTS FACILITY, and <br> TRAMMEL CROW <br> INTERESTS COMPANY, and <br><br> LONE STAR RACE PARK <br> MANAGEMENT CORPORATION, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 3-01CV2321-P |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Robert E. Sheeder
Texas Bar No. 18174300
Jason E. Winford
Texas Bar No. 00788693
**JENKENS & GILCHRIST,**
*A Professional Corporation*
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
(214) 855-4500 Telephone
(214) 855-4300 Facsimile

**ATTORNEYS FOR DEFENDANTS**



# TABLE OF CONTENTS

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     Colbert's ADEA claims against Lone Star Race Park Management Corporation must be dismissed because he was not an employee of that Defendant. . . . . . . . . 4

    II.    Colbert's ADEA claims must dismissed for failure to file suit timely. . . . . . . . . . 5

    III.   Colbert cannot establish that his discharge was due to age discrimination. . . . . . 7

        A.    Colbert has no direct evidence of age discrimination. . . . . . . . . . . . . . . . 9

        B.    Colbert cannot prove that the legitimate, non-discriminatory reasons for his discharge are pretexts for age discrimination. . . . . . . . . . . . . . . . 9

            1.   Colbert was discharged for legitimate, non-discriminatory reasons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.   Colbert cannot establish that the reasons for his discharge are pretexts for age discrimination. . . . . . . . . . . . . . . . . . . . . . . . 11

               a.   Colbert cannot cast doubt as to the truthfulness of the reasons for his discharge sufficient to raise a reasonable inference of age discrimination. . . . . . . . . . . . . . . . . 11

               b.   Colbert's other "evidence" also fails to support an inference of age discrimination. . . . . . . . . . . . . . . . . . 17

    II.    Colbert cannot establish that he was denied the position of Purchasing Manager because of his age. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        A.    Colbert's failure to hire claim is barred because he did not file a timely charge of discrimination for this claim. . . . . . . . . . . . . . . . . . . . . . 22

        B.    Colbert cannot establish a prima facie case because he did not apply for, and was not qualified for, the position of Purchasing Manager. . . . . 25

        C.    Colbert cannot establish that the reasons for not selecting him as Purchasing Manager are pretexts for age discrimination. . . . . . . . . . . . 26

    III.   Alternatively, Colbert can recover no damages after the October 23, 2002 sale of Lone Star Park at Grand Prairie. . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Equity Group, Inc.*,
  2 F.3d 613 (5th Cir.1993) ............................................................................................... 4

*Abraham v. Community Hospital of Mesquite*,
  19 F. Supp. 2d 660 (N.D. Tex. 1997) ............................................................................ 24

*Abraham v. Field Enterprises*,
  511 F. Supp. 391 (N.D. Ill. 1980) ................................................................................. 24

*Aleman v. State of Texas*,
  803 F. Supp. 10 (S.D. Tex. 1992) .................................................................................. 24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ......................................................................................................... 4

*Armendariz v. Pinkerton Tobacco Co.*,
  58 F.3d 144 (5th Cir. 1995) ..................................................................................... 18, 22

*Baldwin Cty. Welcome Center v. Brown*,
  466 U.S. 147 (1984) ......................................................................................................... 6

*Banks v. Rockwell International N. America Aircraft Operations*,
  855 F.2d 324 (6th Cir. 1988) ........................................................................................... 6

*Benes v. City of Dallas*,
  2002 WL 318334 (N.D. Tex. Feb. 26, 2002) .............................................................. 5, 6

*Birdow v. Runyon*,
  1999 WL 956876 (N.D. Tex. Oct. 19, 1999) ................................................................ 20

*Broussard v. L.H. Bossier, Inc.*,
  789 F.2d 1158 (5th Cir. 1986) ......................................................................................... 4

*Burns v. Check Point Software Tech., Inc.*,
  2002 WL 31455598 (N.D. Tex. Oct. 31, 2002) ............................................................ 20

*Butler v. Orleans Parish School Board*,
  2001 WL 1135616 (E.D. La. Sept. 25, 2001) ................................................................. 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................... 3, 4

*Chester v. American Telephone and Telegraph Co.*,
  907 F. Supp. 982 (N.D. Tex. 1994) .............................................................................. 24

*Clark v. Kraft Foods, Inc.*,
   18 F.3d 1278 (5th Cir. 1994) ............................................................... 23

*Clay v. Holy Cross Hospital*,
   253 F.3d 1000 (7th Cir. 2001) ............................................................. 11

*Comer v. The Gates of Cedar Hill*,
   2002 WL 31329364, 3 (N.D. Tex. Oct. 11, 2002) ............................... 6, 7

*Darland v. Staffing Resources, Inc.*,
   41 F. Supp. 2d 635 (N.D. Tex. 1999) ................................................... 19

*Deal v. State Farm County Mutual Insurance Co. of Texas*,
   5 F.3d 117 ............................................................................................. 4

*Deines v. Texas Department of Health and Reg. Svcs.*,
   164 F.3d 277 (5th Cir. 1999) ............................................................... 27

*Dollis v. Rubin*,
   77 F.3d 777 (5th Cir. 1995) ................................................................. 23

*Douglass v. United Services Automobile Ass'n*,
   79 F.3d 1415 (5th Cir.1996) ................................................................. 4

*EEOC v. Louisiana Office of Community Servs.*,
   47 F.3d 1438 (5th Cir.1995) ................................................................ 18

*EEOC v. Texas Instruments Inc.*,
   100 F.3d 1173 (5th Cir. 1996) ....................................................... 11, 19

*Ferrell v. Association of Central Oklahoma Governments*,
   481 F. Supp. 125 (W.D. Okla. 1978) ................................................... 24

*Germany v. Austin Coca-Cola Bottling Co.*,
   2002 WL 629187 (N.D. Tex. April 17, 2002) .................................. 17, 20

*Grimes v. Texas Department of Mental Health and Mental Retardation*,
   102 F.3d 137 (5th Cir.1996) ................................................................ 25

*Grizzle v. Travelers Health Network, Inc.*,
   14 F.3d 261 (5th Cir. 1994) ................................................................. 22

*Hargett v. Valley Federal Savings Bank*,
   60 F.3d 754 (11th Cir. 1995) ............................................................... 24

*Haynes v. Pennzoil Co.*,
   207 F.3d 296 (5th Cir. 2000) ............................................................... 26

*Hershey v. Praxair, Inc.,*
948 F. Supp. 29 (S.D. Tex. 1996) ..................................................................... 24

*Hickey v. Arkla Industrial, Inc.,*
699 F.2d 748 (5th Cir. 1983) ........................................................................... 5

*Jarrett v. U.S. Sprint Committee Co.,*
22 F.3d 256 (10th Cir.), cert. denied, 513 U.S. 951 (1994) ....................................... 6

*Julian v. The City of Houston, Texas,*
314 F.3d 721 (5th Cir. 2002) ........................................................................... 5

*Little v. Liquid Air Corp.,*
37 F.3d 1069 (5th Cir.1994) ............................................................................ 4

*Little v. Republic Refining Co.,*
924 F.2d 93 (5th Cir. 1991) ................................................................... 18, 20, 22

*Matsushita Electrical Industrial Co., Ltd., v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ....................................................................................... 3

*Mayberry v. Vought Aircraft Co.,*
55 F.3d 1086 (5th Cir. 1995) ..................................................................... 17, 20

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ..................................................................................... 7, 9

*Miller v. Walker Division of Butler Manufacturing Co., Inc.,*
577 F. Supp. 948 (S.D. W.Va. 1984) ................................................................ 24

*Molnar v. Ebasco Constructors, Inc.,*
986 F.2d 115 (5th Cir. 1993) ........................................................................... 22

*Moncada v. El Paso Natural Gas Co.,* 1985 WL 2537 (W.D. Tex. 1985) .................... 24

*Moore v. Eli Lilly & Co.,*
990 F.2d 812 (5th Cir.), cert. denied, 510 U.S. 976 (1993) .................................... 19

*National Association of Government Employees v. City Public Service Board of
San Antonio,* 40 F.3d 698 (5th Cir. 1994) .................................................... 22, 23

*Nichols v. Loral Vought System Corp.,*
81 F.3d 38 (5th Cir. 1996) ............................................................................. 27

*Patitu v. Nationsbank of Texas,*
90 F. Supp. 2d 781 (S.D. Tex. 2000) ................................................................ 19

*Patton v. Fujitsu Tech. Solutions, Inc.,*
2002 WL 31498996, N.D. Tex. (Nov. 7, 2002) .................................................. 24

*Pickney v. American District Telegraph Co.*,
    568 F. Supp. 687 (E.D. Ark. 1983) ............................................................ 24

*Pratt v. City of Houston, Texas*,
    247 F.3d 601 (5th Cir.2001) ..................................................................... 8

*Ragas v. Tennessee Gas Pipeline Co.*,
    136 F.3d 455 (5th Cir.1998) ..................................................................... 4

*Ray v. Freeman*,
    626 F.2d 439 (5th Cir. 1980), <u>cert. denied</u>, 450 U.S. 997 (1981) ......................... 23

*Ray v. Tandem Computers, Inc.*,
    63 F.3d 429 (5th Cir. 1995) ..................................................................... 22

*Reeves v. Sanderson Plumbing Product, Inc.*,
    530 U.S. 133 (2000) ............................................................................. 7

*Rhodes v. Guiberson Oil Tools*,
    75 F.3d 989 (5th Cir. 1996) ..................................................................... 9

*Ringgold v. National Maintenance Corp.*,
    796 F.2d 769 (5th Cir. 1986) ................................................................... 6

*Sandstad v. CB Richard Ellis, Inc.*,
    309 F.3d 893 (5th Cir. 2002) .......................................................... 7, 8, 9, 17, 20

*Sauzek v. Exxon Coal USA, Inc.*,
    202 F.3d 913 (7th Cir. 2000) ................................................................... 24

*Scott v. University of Miss.*,
    148 F.3d 493 (5th Cir. 1998) ................................................................... 8

*Seitzinger v. Reading Hospital and Medical Center*,
    165 F.3d 236 (3rd Cir. 1999) ................................................................... 6

*Sherrod v. Sears, Roebuck & Co.*,
    785 F.2d 1312 (5th Cir. 1986) ................................................................. 20

*St. Louis v. Texas Worker's Comp. Commission*,
    65 F.3d 43 (5th Cir. 1995), <u>cert. denied</u>, 518 U.S. 1024 (1996) ........................... 5

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993) ............................................................................. 7

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376 (5th Cir. 2002) ................................................................. 5, 6

*Torres v. Liberto Mfg. Co., Inc.,*
    2002 WL 2014426 (N.D. Tex. Aug. 30, 2002) ......................................................... 5

*Tyler v. Union Oil Co. of Calif.,*
    304 F.3d 379 (5th Cir. 2002) ............................................................................... 28

*United States v. Diebold, Inc.,*
    369 U.S. 654 (1962) .............................................................................................. 3

*Upshaw v. Dallas Heart Group,*
    961 F. Supp. 997 (N.D. Tex. 1997) ...................................................................... 19

*Vadie v. Mississippi State University,*
    218 F.3d 365 (5th Cir.), cert. denied, 531 U.S. 1113 (2001) .................................. 8

*Walther v. Lone Star Gas Co.,*
    952 F.2d 119 (5th Cir. 1992) ............................................................................... 27

*Walch v. Intecom, Inc.,*
    1997 WL 452742 (N.D. Tex. July 31, 1997) ......................................................... 19

*Williams v. Simmons Co.,*
    185 F. Supp. 2d 665 (N.D. Tex. 2001) ................................................................. 23

*Wilson v. Allied Chemical Corp.,*
    456 F. Supp. 249 (E.D. Va. 1978) ........................................................................ 24

## STATUTES

29 U.S.C. § 621 et seq. ..................................................................................... 2, 5, 7, 22

## RULES

Fed. R. Civ. P. 56(c) ............................................................................................... 3

Fed. R. Evid. 802 .................................................................................................. 20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOEL COLBERT, | § | |
| *et ux* GAYLE COLBERT, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3-01CV2321-P |
| | § | |
| LONE STAR PARK AT GRAND PRAIRIE | § | |
| f/k/a a/k/a MBLS INC., LSRPI, INC., | § | |
| LONE STAR RACE PARK LTD., | § | |
| LONE STAR RACETRACK INC. | § | |
| LONE STAR PARK, GRAND PRAIRIE | § | |
| SPORTS FACILITY, and | § | |
| TRAMMEL CROW | § | |
| INTERESTS COMPANY, and | § | |
| | § | |
| LONE STAR RACE PARK | § | |
| MANAGEMENT CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants **Lone Star Race Park, Ltd.** and **Lone Star Race Park Management Corporation** respectfully submit their Brief in Support of Defendants' Motion for Summary Judgment as follows:

### Summary of Argument

Plaintiff Joel Colbert is a former employee of Lone Star Race Park, Ltd., who was last employed as a Cleaning Services Supervisor at Lone Star Park at Grand Prairie, which was operated by Lone Star Race Park, Ltd. Colbert was discharged on or about October 8, 2000 by his immediate supervisor Chris Blue, the Manager of the Cleaning Services Department, as a result of numerous instances of poor work performance and insubordination over a several month period.

Colbert asserts a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.[1] Specifically, Colbert complains (1) that he was not hired for the position of Purchasing Manager because of his age, and (2) that he was discharged from his position of Pavilion Cleaning Services Supervisor because of his age. With respect to each of Colbert's claims of age discrimination, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

*First*, Joel Colbert's ADEA claims against Lone Star Race Park Management Corporation must be dismissed because that corporation never employed Colbert. Colbert was employed only by Lone Star Race Park, Ltd.

*Second*, Colbert's ADEA claims against Defendants must be dismissed because he did not file suit within 90 days of his receipt of his notice of right to sue as required under the ADEA.

*Third*, with regard to Colbert's claim that he was discharged because of his age, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law, because: (1) Colbert has no direct evidence of discrimination; and (2) even assuming a prima facie case can be shown, the summary judgment evidence establishes that Colbert was discharged for legitimate non-discriminatory reasons, and Colbert cannot demonstrate that those reasons were a pretext for age discrimination.

*Fourth*, with regard to Colbert's claim that he was not hired for the position of Purchasing Manager because of his age, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law, because: (1) Colbert did not exhaust his administrative remedies in that he did not raise the denial of the position in his EEOC charge of discrimination; (2) Colbert cannot

---

[1]On January 15, 2002, the Court dismissed all claims of Gayle Colbert and Joel Colbert except for Joel Colbert's claims of age discrimination under the ADEA.

**Defendants' Brief in Support of Motion for Summary Judgment** - Page 2

establish a prima facie case of discrimination, because he did not apply for the position nor was he qualified for the position; (3) Colbert cannot establish that the legitimate, non-discriminatory reasons for hiring someone else—even assuming Colbert had applied for the position—are a pretext for age discrimination.

*Fifth*, as an alternative ground for partial summary judgment, Colbert's claimed damages, assuming liability were found, cannot be awarded beyond October 23, 2002. Effective October 23, 2002, Lone Star Race Park, Ltd. sold the business of Lone Star Park at Grand Prairie, and as of that date Lone Star Race Park, Ltd. does not own or operate Lone Star Park at Grand Prairie and has no employees. Thus, even absent the alleged discrimination, Colbert would no longer be employed by, or receive wages from, Lone Star Race Park, Ltd.

## Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to te party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The moving party has the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and identifying that portion of the record that demonstrate such an absence. Celotex, 477 U.S. at 323. Once the moving party has made and initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment

cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict is her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. Id. at 248-50; Abbott v. Equity Group, Inc., 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir.1996). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted. Celotex, 477 U.S. at 322-23. The Court will not, in the absence of any proof, assume that the nonmoving party could or would prove the essential facts necessary to support a judgment in favor of the nonmovant. Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir.1994).

Finally, the Court has no duty to search the record for triable issues. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Id. A party may not rely on "unsupported assertions" as competent summary judgment evidence. Id.

### Argument and Authorities

**I.     Colbert's ADEA claims against Lone Star Race Park Management Corporation must be dismissed because he was not an employee of that Defendant.**

Under the ADEA, a plaintiff must establish that the defendant is his or her employer in order to have standing, and absent such an employment relationship the claim must be dismissed. Deal v. State Farm County Mutual Ins. Co. of Texas, 5 F.3d 117, 188-19 and n.2 (5th Cir. 1993); Broussard

v. L.H. Bossier, Inc., 789 F.2d 1158, 1159-61 (5th Cir. 1986); Hickey v. Arkla Indus., Inc., 699 F.2d

748, 753 (5th Cir. 1983); Torres v. Liberto Mfg. Co., Inc., 2002 WL 2014426, * 2-3 (N.D. Tex.

Aug. 30, 2002).

Colbert was employed by Lone Star Race Park, Ltd., the entity that owned and operated Lone

Star Park at Grand Prairie. Colbert Depo. p. 61 line 17 - p. 62 line 20, Exs. 7-8, App. at 14-15, 149a,

149b; Greco Aff. ¶ 2, App. at 192; Johnson Aff. ¶ 3, App. at 195. He was not employed by Lone

Star Race Park Management Corporation. Greco Aff. ¶ 2, App. at 192; Johnson Aff. ¶ 3, App. at

195. Consequently, Colbert has no standing to assert ADEA claims against Lone Star Race Park

Management Corporation, and these claims should be dismissed.

## II.    Colbert's ADEA claims must dismissed for failure to file suit timely.

A plaintiff alleging age discrimination under the ADEA must first file a charge of

discrimination with the EEOC before pursuing claims in federal court. 29 U.S.C. § 626(d); Julian v.

The City of Houston, Texas, 314 F.3d 721, 725 (5th Cir. 2002). The ADEA has a 90-day limitations

period for the ADEA complainant who receives notice from the EEOC. Julian, 314 F.3d at 726. If

the charge of discrimination is dismissed or the proceedings are otherwise terminated and the EEOC

issue a right-to-sue notice, the plaintiff must bring a civil action within 90 days after receipt of the

EEOC's right-to-sue notice. 29 U.S.C. § 626(e); Julian, 314 F.3d at 726; St. Louis v. Texas Worker's

Comp. Comm'n, 65 F.3d 43, 47 (5th Cir. 1995), cert. denied, 518 U.S. 1024 (1996); Benes v. City

of Dallas, 2002 WL 318334, *7 (N.D. Tex. Feb. 26, 2002); see also Taylor v. Books A Million, Inc.,

296 F.3d 376, 379 (5th Cir. 2002) (Title VII).

The requirement to file a lawsuit within the 90-day limitations period is strictly construed.

Taylor, 296 F.3d at 379. Courts consistently dismiss cases in which the plaintiff did not file a

complaint until after the 90-day period expired. Id. at 379 (citing cases). Even missing the 90-day

limitation period by a few days, or even one day, will subject the complaint to dismissal. See, e.g., Comer v. The Gates of Cedar Hill, 2002 WL 31329364, *3 (N.D. Tex. Oct. 11, 2002) (Godbey, J.) (three days beyond the 90-day period); Butler v. Orleans Parish School Board, 2001 WL 1135616 (E.D. La. Sept. 25, 2001) (one day beyond the 90-day period).

The 90-day limitation period begins to run on the date that the EEOC right to sue letter is received by counsel or by the claimant himself, whichever is earlier.[2] Seitzinger v. Reading Hosp. and Med. Center, 165 F.3d 236, 238-39 (3rd Cir. 1999); Ringgold v. National Maintenance Corp., 796 F.2d 769, 770 (5th Cir. 1986); Benes, 2002 WL 318334 at *7; Colbert v. Lone Star Park at Grand Prairie, No. 3-01CV2321-P, Order at 5 (N.D. Tex. Oct. 1, 2002) (Solis, J.). A conclusory allegation that suit was filed within 90 days of receipt of the notice is insufficient to establish that suit was timely filed. Taylor, 296 F.3d at 379. If there is no indication when the EEOC was actual received, the Court must engage in a presumption as to when the notice was received after it was mailed. Id. at 380.[3]

Absent evidence of the specific date of receipt, Courts apply the three-day presumption in Rule 6(e) of the Federal Rules of Civil Procedure. Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 148 n. 1 (1984); Seitzinger, 165 F.3d at 239; Jarrett v. U.S. Sprint Comm. Co., 22 F.3d 256, 259 (10th Cir.), cert. denied, 513 U.S. 951 (1994); Comer, 2002 WL 31329364 at *3; Colbert, No. 3-01CV2321-P, Order at 5. In Comer, Judge Godbey of this Court applied the three-day

---

[2]Whether the EEOC sent the notice to the claimant directly rather than to counsel does not toll the running of the 90-day limitations period. See, e.g., Banks v. Rockwell Int'l N. Am. Aircraft Operations, 855 F.2d 324, 326-27 (6th Cir. 1988).

[3]The Taylor court did not rule on the exact number of days after mailing that a notice is presumed received, since the plaintiff in that case failed to file suit timely under even the longest presumption that any court had ever applied. Taylor, 296 F.3d at 380.

presumption and granted summary judgment where suit was filed 93 days after the presumed date of receipt. <u>Comer</u>, 2002 WL 31329364 at *3

In this case, the EEOC mailed its notice of right to sue to Colbert on August 14, 2001. Colbert Depo. Ex. 40, App. at 160; *First Amended Complaint* ¶ 21. As Colbert testified under oath in his deposition, he ***does not know*** when he received the EEOC notice in the mail. Colbert Depo. p. 319 line 22 - p. 320 line 20, App. at 137-38. Applying the presumption that he received the notice three days after it was mailed, Colbert is presumed by law to have received it on August 17, 2002. Colbert filed suit on November 16, 2001, ***94 days*** after the EEOC notice was mailed, and ***91 days*** after he is presumed by law to have received it. Because suit was not filed within 90 days, Colbert's ADEA claims must be dismissed.

**III.    Colbert cannot establish that his discharge was due to age discrimination.**

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges discrimination, "liability depends on whether the protected trait actually motivated the employer's decision." <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 141 (2000). That is, the plaintiff's age must have "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." <u>Id.</u>

Claims brought under the ADEA are subject to the same analytical framework set out by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and later elaborated upon in <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993). <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 897 (5th Cir. 2002). A plaintiff may prove intentional discrimination through either direct or circumstantial evidence. <u>Id.</u> at 896. Where, as in this case, the plaintiff has no direct

evidence and must instead rely on indirect, circumstantial evidence, the evidence must be such "as to allow a rational fact finder to make a reasonable inference that age was a determinative reason for the employment decision." Scott v. University of Miss., 148 F.3d 493, 500 (5th Cir. 1998).

To create an inference of discrimination, the plaintiff must first establish a prima facie case of discrimination. Sandstad, 309 F.3d at 897. To establish a prima facie case of unlawful discharge, the plaintiff must prove that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either replaced by someone younger or outside the protected class. Id. at 897. If the plaintiff satisfies the prima facie case, the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision. Id. at 897. This burden is only one of production, not persuasion, involving no credibility assessments. Id. at 898. Once the defendant proffers its legitimate, nondiscriminatory reason, the inference of discrimination established by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination. Id. at 897. The plaintiff may meet its ultimate burden with evidence tending to show that the reason offered by the defendant is a pretext for discrimination. Id.

An employer is entitled to summary judgment "if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination occurred." See Pratt v. City of Houston, Texas, 247 F.3d 601, 606 (5th Cir.2001) (quoting Reeves, 530 U.S. at 148); see also Vadie v. Mississippi State Univ., 218 F.3d 365, 372 (5th Cir.) (an employer is entitled to judgment as a matter of law "if the evidence taken as a whole would not allow a [fact-finder] to infer that the actual reason for the [employer's decision] was discriminatory"), cert. denied, 531 U.S. 1113 (2001).

**A.    Colbert has no direct evidence of age discrimination.**

Direct evidence of discrimination is evidence that proves the defendant acted with discriminatory intent, without the need for inference or presumption. Sandstad, 309 F.3d at 897. Here, the evidence on which Colbert relies on does not consist of evidence proving Defendants acted with discriminatory intent, without the need for inference or presumption. See Colbert Depo. p. 262, line 18 - p. 263 p. 7, App. at 113-14; *Plaintiff's Response to Interrogatory No. 1*, App. 240-42. Consequently, he must rely on the McDonnell Douglas burden-shifting analysis. Sandstad, 309 F.3d at 896.

**B.    Colbert cannot prove that the legitimate, non-discriminatory reasons for his discharge are pretexts for age discrimination.**

As part of the McDonnell Douglas framework, Colbert must first establish a prima facie case. Sandstad, 309 F.3d at 897. Assuming, *arguendo*, that Colbert can establish a prima facie case, Colbert's claim fails because Defendants have proffered legitimate, non-discriminatory reasons for his discharge, and Colbert cannot show that these reasons are pretexts for age discrimination.

**1.    Colbert was discharged for legitimate, non-discriminatory reasons.**

A non-discriminatory reason is legitimate if it would support a finding that unlawful discrimination was not the cause of the discharge if believed by the trier of fact. Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 992 (5th Cir. 1996). The summary judgment evidence establishes that Colbert was discharged for legitimate, non-discriminatory reasons.

After Colbert's unacceptable performance on September 30 and October 1, 2000, Chris Blue reviewed Colbert's performance for the previous several months. After consulting with Keith Moore and Jeff Greco, Blue decided to terminate Colbert's employment and Moore and Greco concurred. The reasons included: (i) the insubordinate behavior Colbert exhibited as early as July 14, 2000 when

he failed to attend the mandatory supervisors' meeting, which turned out to be indicative of his performance and behavior throughout the remainder of his employment; (ii) his failure to submit weekly schedules as Blue had requested; (iii) his poor management of the scheduling in his department, which often resulted in either staffing shortages or excess employee hours; (iv) his ordering of supplies without obtaining Blue's prior approval as requested; (v) his consistently inadequate performance in completing requested cleaning and maintenance tasks in a thorough and timely manner; (vi) his inappropriate and abusive language and behavior toward Moore and Blue during the September 15, 2000 meeting, which Blue considered to be insubordinate on Colbert's part; (vii) his departing work and leaving the Pavilion shorthanded during a private event on or about September 9, 2000, without checking with Blue to obtain his permission, which Blue considered to be an abandonment of his post without authorization; (viii) his again departing work and leaving the Pavilion shorthanded due to his poor scheduling on September 30, 2000, again without checking with Blue to get his permission, which Blue considered to be abandonment of his post without authorization; and (ix) his failure to report to work until well after his scheduled time on October 1, 2000, without contacting Blue to let him know that he would be late and without providing Blue with an acceptable explanation.  Blue Decl. ¶¶ 14-15, App. at 164-65; Colbert Depo. p. 222 line 8 - p. 223 line 2, Ex. 22, App. at 98-99, 158; see also Moore Aff. ¶¶ 9-10, App. at 188.

Blue discussed these reasons with Colbert when he informed him of his termination.  Blue Decl. ¶ 14, App. at 164; Colbert Depo. p. 161 lines 18-24, p. 205 lines 17-23, p. 206 line 12 - p. 207 line 13, p. 208 lines 1-3, p. 209 lines 6-23, App. at 65, 90-93a.  Colbert's age was not a factor in the decision to terminate his employment.  Blue Decl. ¶ 16, App. at 165; Moore Aff. ¶¶ 11, App. at 188; Greco Aff. ¶ 17, App. at 194.  Thus, Defendants have met their burden of producing evidence of the

legitimate, non-discriminatory reasons for Colbert's termination. The burden then shifts to Colbert to demonstrate that each of these reasons are pretexts for age discrimination.

> **2. Colbert cannot establish that the reasons for his discharge are pretexts for age discrimination.**

Colbert cannot demonstrate that the legitimate, non-discriminatory reasons for his discharge are pretexts for age discrimination. In particular, Colbert cannot cast doubt on the truthfulness of the reasons for his termination or otherwise demonstrate that his age was a determining factor in his termination.

> **a. Colbert cannot cast doubt as to the truthfulness of the reasons for his discharge sufficient to raise a reasonable inference of age discrimination.**

To survive summary judgment, Colbert must cast doubt as to the honesty of each and every non-discriminatory reason advanced for his termination. EEOC v. Texas Instruments Inc., 100 F.3d 1173, 11802 (5th Cir. 1996); Clay v. Holy Cross Hosp., 253 F.3d 1000, 1007 (7th Cir. 2001) (holding that a plaintiff "must present facts to rebut each and every legitimate non-discriminatory reason advanced by [his employer] in order to survive summary judgment"). The evidence on which Colbert relies to support his age discrimination claim does not indicate that each of the reasons given for his discharge are false or dishonest.

*First*, Colbert cannot cast doubt on the veracity of Blue's reliance on Colbert's failure to attend a mandatory supervisor's meeting. Colbert was the only supervisor who failed to attend, and Blue considered Colbert's absence an act of insubordination. Blue Decl. ¶ 4, App. at 161. Colbert does not dispute that in July of 2000 he missed a mandatory supervisor's meeting called by Blue, but claims that his car broke down and he had a problem finding where the meeting was being held. Colbert Depo. p. 125 line 16 - p. 127 line 4, p. 213 lines 1-13, App. at 34-36, 94. There is no

evidence that Blue did not honestly rely on Colbert's failure to attend the meeting as a basis for his discharge.

*Second*, Colbert cannot call into question his failure to turn in work schedules as one of the reasons for Blue's decision to discharge him. Blue repeatedly reminded Colbert to submit the schedules for his approval and expressed his displeasure at Colbert's failure to turn them in. Blue Decl. ¶¶ 3, 7, 10, 11, App. at 161-63. Colbert admits that Blue instructed him to turn the schedules in for approval on the Thursday prior to each workweek. Colbert Depo. p. 70 line 15 - p. 72 line 19, App. at 22-24. Colbert also admits he had a problem turning in the work schedules on time, and that he turned a schedule in on time only once. Colbert Depo. p. 70 line 15 - p. 72 line 19, App. at 22-24. That Colbert was "under the impression" that Blue understood Colbert's difficulty in turning in the schedules, and that Colbert thought that it "did not appear to be a problem," does not cast doubt on Blue's reliance on this as a reason for Colbert discharge.

*Third*, Colbert cannot cast doubt that Blue honestly relied on his assessment that Colbert poorly managed the scheduling in his department, resulting in either staffing shortages or excess employee hours. Blue Decl. ¶¶ 5, 7, 9, 11, 12, App. at 161-64. Blue spoke frequently about these issues with Colbert, and discussed these scheduling problems with Colbert in their meeting on September 15, 2000. Blue Decl. ¶¶ 7, 11, App. at 162-63. Colbert admits that Moore and Blue told him during their meeting on September 15, 2000 that they were unhappy with his scheduling of his employees due to unnecessary employee overlap, and that this had been discussed with him before. Colbert Depo. p. 178 lines 2-6, 9-15, 18-20, p. 179 line 22 - p. 180 line 2, App. at 74-76. Moore reminded Colbert that it was his job to ensure that employee overlap would not happen again and that Colbert needed to "come on board" with Blue and Moore to fix the problem. Colbert Depo. p. 180 line 13 - p. 181 line 5 App. at 76-77. Colbert also admits that, on September 9 and September 30,

2000, the cleaning services staff in the Pavilion were understaffed. Colbert Depo. p. 147 lines 2-20, p. 217 line 21 - p. 218 line 22, App. at 54, 95-96. Colbert further admits that Blue was upset that the scheduling problem had left the Pavilion short-handed on the night of September 30, 2000. Colbert Depo. p. 198 line 25 - p. 199 line 9, 205 lines 11-16, App. at 87-88, 90. There is no evidence disputing the truthfulness of this reason for his discharge.

*Fourth*, Colbert cannot cast doubt on the truthfulness of Blue's statement that he was discharged, in part, because of his failure to obtain Blue's prior approval on purchase orders. Blue Decl. ¶ 8, App. at 162. Colbert admits Blue told him to submit purchase orders to him for approval, and he admits he may have ordered the supplies before getting Blue's approval of the purchase order. Colbert Depo. p. 128 lines 14-19, p. 393 lines 6-24, App. at 37, 143. Colbert presents no evidence disputing the honesty of this reason as a basis for his discharge.

*Fifth*, Colbert cannot cast doubt that he was discharged, in part, because of his failure to timely complete cleaning and maintenance tasks assigned to him. Blue Decl. ¶¶ 5, 7, 10, 11, App. at 161-63. It is undisputed that Chris Blue frequently met with Colbert and gave him lists of tasks that he wanted Colbert to complete during a specified time. Colbert Depo. p. 129 lines 12-16, p. 131 lines 3-19, App. at 38, 40. Colbert concedes that sometimes the projects were not done on time. Colbert Depo. p. 132 lines 5-25, App. at 41. In particular, Colbert was given a list of jobs to be completed by September 3, 2000, and not all items were completed on time. Colbert Depo. p. 134 line 12 - p. 136 line 11, App. at 42-44. Colbert admits that Blue discussed with him that items on the list were not completed in the requested time frame. Colbert Depo. p. 142 lines 8-12, App. at 50.

It is further undisputed that, subsequently, Chris Blue and Keith Moore met with Colbert on September 15, 2000 to go over their concerns about the cleaning services in the Pavilion, including Colbert's failure to thoroughly and timely complete the cleaning and maintenance assignments on his

list, which had been due on September 3, 2000.  Colbert Depo. p. 130 lines 18-25, p. 149 line 6 - p. 150 line 13, p. 150 line 24 - p. 151 line 5,  p. 151 line 10 - p. 152 line 17, p. 153 line 24 - p. 154 lines 6, p. 158 line 9 - p. 159 line 1, p. 165 line 12 - p. 166 line 13, p. 181 lines 6-18, p. 182 line 20 - p. 183 line 8, p. 183 line 18 - p. 184 line 9, App. at 39, 56-60, 62-63, 69-70, 77-80.  Colbert also admits that during this meeting Moore complained to Colbert that Pavilion cleaning services staff did not clean enough while the building had customers, and instead let work wait for the third shift to do.  Colbert Depo. p. 170 lines 11-18, App. at 71.

Colbert concedes that Moore and Blue told him during the meeting that they wanted him to get the tasks done that had not been completed as previously requested.  Colbert Depo. p. 161 line 25 - p. 162 line 21, App. at 65-66.  Colbert agreed with Moore's and Blue's concerns about the Pavilion cleaning services that they raised during this meeting, and Colbert agreed he would get the tasks done.  Colbert Depo. p. 156 lines 20-23, App. at 61.  Thus, Colbert essentially concedes that his supervisor Chris Blue, as well as Keith Moore, were dissatisfied with his job performance pertaining to the timely completion of cleaning and maintenance assignments, and that they raised their concerns with him.  Colbert presents no evidence that these concerns over Colbert's performance was not honestly relied on as a reason for terminating his employment.

*Sixth*, Colbert cannot rebut the truthfulness of Blue's reliance on Colbert's inappropriate conduct during his meeting with Blue and Keith Moore on September 15, 2000.  Blue Decl. ¶ 11, App. at 163; Moore Aff. ¶ 6, App. at 187.  Colbert concedes he got upset at Moore and Blue during the meeting on September 15, 2000, and that he raised his voice loudly to them.  Colbert Depo. p. 156 lines 5-12, p. 159 lines 13-25, p. 180 lines 3-7, App. at 61, 63, 76.  He also admits that he may have used the word "damn."  Colbert Depo. p. 160 lines 17-20, App. at 64.  Colbert also admits that during the meeting Blue reminded him that Blue was his boss.  Colbert Depo. p. 172 lines 12-20,

App. at 72. Colbert also admits that Blue had to tell Colbert to "cool it" during the meeting. Colbert Depo. p. 173 lines 20-25, App. at 73. Colbert further concedes that when Blue told him that he was being discharged in part because of his language during this meeting, Colbert admitted to Blue that he "may have" used a "cuss word." Colbert Depo. p. 161 lines 18-24, App. at 65. There is no evidence casting doubt that Blue based Colbert's discharge in part on his behavior during this meeting, which any employer or supervisor would certainly consider to be inappropriate and insubordinate.

*Seventh*, Colbert cannot cast doubt that he was discharged, in part, because of his leaving work during the India Festival on September 9, 2000, leaving the Pavilion cleaning staff short-handed. Blue Decl. ¶ 9, App. at 162-63. Colbert recalls there was an India Festival in September 2000 that lasted late into the evening, with a large crowd attending. Colbert Depo. p. 144 lines 7-18, App. at 51. Colbert admits he was responsible for the cleaning services around the perimeter of the building. Colbert Depo. p. 144 lines 19-21, App. at 51. Colbert also admits he left when the third shift arrived, and that he does not remember asking Chris Blue's approval to leave. Colbert Depo. p. 144 line 22 - p. 146 line 4, App. at 51-53. Colbert also admits that cleaning services employees from the Grandstand had to be diverted to the Pavilion to cover for the shortage of Pavilion employees. Colbert Depo. p. 147 lines 2-20, p. 217 line 21 - p. 218 line 22, App. at 53, 95-96. The record shows that Colbert's departure from the India Festival while they were under-staffed was a factor in his discharge, and he has no evidence disputing that Chris Blue actually relied on this as a reason for his discharge.

*Eighth*, Colbert cannot cast doubt that one of the reasons for Blue's discharge of Colbert was his departing work on Saturday, September 30, 2000, and leaving the third shift short-handed as a result of his poor scheduling. Blue Decl. ¶ 12, App. at 163-64. Colbert admits that he let two

employees off that night without replacing them from others in his department, which left the second shift under-staffed from what was required to handle the necessary cleaning for a night of live horse-racing in September. Colbert Depo. p. 190 line 2 - p. 191 line 4, p. 195 line 22 - p. 196 line 6, App. at 81-82, 84-85. It is also undisputed that employees had to be diverted from the Grandstand to cover the staffing shortage in the Pavilion. Colbert Depo. p. 191 lines 5-8, p. 192 lines 6-21, App. at 82-82a.

Colbert also admits that he left work at 9:30 p.m. during the second shift, leaving only three employees besides the shift supervisor working the second shift, two of whom were employees from the Grandstand sent over by Chris Blue. Colbert Depo. p. 191 lines 9-11, p. 191 line 17 - p. 192 line 21, p. 197 lines 11-19, p. 220 lines 1-25, App. at 82-82a, 86, 97. Colbert admits that the last time he spoke with Blue was about an hour before he left. Colbert Depo. p. 193 lines 1-7, p. 197 lines 11-19, App. at 83, 86.

Colbert acknowledges that, after he left, the two employees borrowed from the Grandstand were called back to the Grandstand due to a large spill, leaving the Pavilion further short-handed. Colbert Depo. p. 198 lines 3-18, p. 413 line 11 - p. 414 line 1, App. at 87, 144-45. Colbert admits that Blue was upset that Colbert's scheduling problems had left the Pavilion short-handed on the night of September 30, 2000, and that Blue told him so the next day, October 1, 2000. Colbert Depo. p. 198 line 25 - p. 199 line 9, 205 lines 11-16, App. at 87-88, 90. There is no evidence casting doubt that Blue honestly relied on this incident as a reason for Colbert's discharge.

***Finally***, Colbert cannot cast doubt as to the veracity of Blue's explanation that he discharged Colbert, in part, because he arrived late to work on October 1, 2000, without letting his supervisor Chris Blue know. Blue Decl. ¶ 13, App. at 164. Colbert admits he did not show up to work until 4:00 p.m. Colbert Depo. p. 199 lines 13-14, App. at 88. While Colbert claims he called his assistant,

Rodrigo Echaore and told him he would be late, he admits he did not tell Echaore to tell Chris Blue nor did he call Chris Blue himself to let him know he would be late. Colbert Depo. p. 199 lines 15-25, p. 200 lines 1-23, App. at 88-89. It is undisputed that Chris Blue was dissatisfied with Colbert's late arrival, his failure to call him, and the adequacy of his explanation for being late. Blue Decl. ¶ 13, App. at 164. There is no evidence casting doubt as to the truthfulness of this reason for Colbert's discharge.

In sum, because Colbert's evidence does not cast doubt as to the truthfulness of Defendants' reliance on each the given reasons for his discharge, summary judgment for Defendants is warranted.

  **b.**  **Colbert's other "evidence" also fails to support an inference of age discrimination.**

Colbert's additional efforts to establish that Defendants' articulated reasons for his discharge are pretextual also fall short as a matter of law, since they are insufficient to create a fact issue as to discriminatory intent.

*First*, Colbert disputes his supervisors' assessment of his work performance, claiming generally, for example, that he was not insubordinate, that he did not abandon his job post, that he adequately covered himself when he was late, and the like. However, the Fifth Circuit Court of Appeals has made it absolutely clear that merely disputing an employer's assessment of the plaintiff's performance will not create an issue of fact. Sandstad, 309 F.3d at 899. The issue is not whether the employer's reasons were incorrect or erroneous, but whether those reasons were the real reasons for the plaintiff's termination; that is, the issue is whether the decision was made with discriminatory motive. See Sandstad, 309 F.3d at 899; Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995); Germany v. Austin Coca-Cola Bottling Co., 2002 WL 629187, *7 (N.D. Tex. April 17, 2002) (Solis, J.). As the Fifth Circuit has held:

> [E]ven an incorrect belief that an employee's performance is inadequate constitutes
> a legitimate, non-discriminatory reason. We do not try in court the validity of good
> faith belief as to an employee's competence. Motive is the issue.... [A] dispute in the
> evidence concerning ... job performance does not provide a sufficient basis for a
> reasonable factfinder to infer that [the] proffered justification is unworthy of credence.

Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991). The employment discrimination laws

are "not intended to be a vehicle for judicial second-guessing of employment decisions nor ... to

transform the courts into personnel managers." EEOC v. Louisiana Office of Community Servs., 47

F.3d 1438, 1448 (5th Cir.1995).

Here, Colbert has done little more than disagree with his supervisors' assessments of his

performance, which misses the mark. It is insufficient that Colbert believes, for example, that his

supervisors were wrong in thinking he was insubordinate, that he had inappropriately left work

without permission on two occasions, that he should have contacted his supervisor when he would

be arriving several hours late, and that his performance of his various job duties and tasks was

inadequate. But even if, as Colbert believes, they were incorrect in their assessments, he has still not

raised a fact issue as to whether those assessments (however erroneous) were the actual reasons for

his termination, rather than discriminatory motive. Thus, Colbert's disputes about his performance

are insufficient to create a triable fact issue as to discrimination or to avoid summary judgment.

*Second*, Colbert asserts that age discrimination is somehow indicated because he did not

receive any write-ups or warnings prior to being discharged. However, whether Colbert was warned

that his job was in jeopardy is immaterial, since "the ADEA does not prohibit termination without

warning." Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 151 (5th Cir. 1995).

Furthermore, the undisputed evidence demonstrates that Colbert's supervisor was not

required by policy or practice to follow a specific disciplinary procedure before discharging him, such

as written reprimands, probation, or formal warnings, and Colbert admittedly has no evidence to the

contrary. Blue Decl. ¶ 17, App. at 165-66; Johnson Aff. ¶ 5, App. at 195; Colbert Depo. p. 263, line

14 - p. 264 line 14, p. 265 lines 7-10, App. at 114-16.  Nonetheless, Colbert admits that he was given

at least one warning by Chris Blue.  Colbert Depo. p. 267 line 25 - p. 268 line 16, App. at 118-19.

Moreover, even if Chris Blue had somehow deviated from disciplinary policy in discharging

Colbert, this in no way indicates that his age was a factor in his termination.  An employer's deviation

from its own policies or procedures is not sufficient evidence that the termination was motivated by

age bias, especially absent evidence of differential treatment compared to younger employees.  Texas

Instruments, 100 F.3d at 1182; Moore v. Eli Lilly & Co., 990 F.2d 812, 819 (5th Cir.), cert. denied,

510 U.S. 976 (1993); Patitu v. Nationsbank of Texas, 90 F. Supp. 2d 781, 793 (S.D. Tex. 2000);

Darland v. Staffing Resources, Inc., 41 F. Supp. 2d 635, 640 (N.D. Tex. 1999) (Maloney, J.);

Upshaw v. Dallas Heart Group, 961 F. Supp. 997, 1002 (N.D. Tex. 1997) (Buchmeyer, C.J.); Walch

v. Intecom, Inc., 1997 WL 452742, *4 (N.D. Tex. July 31, 1997) (Buchmeyer, C.J.).  Colbert has

no evidence that his not being given three write-ups or warnings indicates age discrimination.  Colbert

Depo. p. 266 lines 8-17, p. 268 lines 17-24, App. at 117, 199.  Significantly, Colbert was treated no

differently than younger employees in this regard, since there is no evidence that there were any

employees younger than Colbert who were given three write-ups or warnings before being

terminated.  Colbert Depo. p. 266 lines 21-25, p. 269 lines 5-9, App. at 117, 120.  Thus, no

reasonable inference of age discrimination can be drawn from the procedures followed in terminating

Colbert.

*Third*, Colbert contends that two younger employees were treated more favorably than him,

in that they were not discharged for discipline problems.  Specifically, Plaintiff contends that (1)

Patrick Edock, an approximately 28 year old day shift lead man in the Cleaning Services Department,

refused to take a drug test and was suspended and allowed to return to his position; and (2) Martine

Lara, an approximately 32 year old cleaning employee in the Cleaning Services Department, was "written up" for sexual harassment, given probation, and allowed to come back to work. Colbert Depo. p. 273 line 19 - p. 275 line 18, p. 276 lines 2-7, p. 276 line 24 - p. 277 line 1, App. at 124-28; *Plaintiff's Response to Interrogatory Nos. 1 and 5*, App. at 240-42, 244.

Colbert's attempted comparison fails to support an inference of age discrimination. In discrimination cases, courts compare the treatment of other employees whose conduct is "nearly identical" to the plaintiff's conduct and who were treated more favorably than the plaintiff. Sandstad, 309 F.3d at 901. In other words, a plaintiff must show that younger employees were treated differently under circumstances "nearly identical" to his. Mayberry, 55 F.3d at 1091-92; Little, 924 F.2d at 96-97; Burns v. Check Point Software Tech., Inc., 2002 WL 31455598, *14 (N.D. Tex. Oct. 31, 2002) (Solis, J.); Germany, 2002 WL 629187 at *5. The persons with whom the plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Birdow v. Runyon, 1999 WL 956876 at *4 (N.D. Tex. Oct. 19, 1999) (Solis, J.) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)); accord Germany, 2002 WL 629187 at *5; see also Sherrod v. Sears, Roebuck & Co., 785 F.2d 1312, 1315 (5th Cir. 1986) (rendering judgment for employer on ADEA claim where other employee relied upon by plaintiff was not similarly situated to plaintiff).

Colbert's testimony about Edock and Lara is based solely on hearsay and cannot be considered as competent evidence. Fed. R. Evid. 802. Even were the Court to consider Colbert's testimony, it is clear that neither Edock nor Lara were similarly situated to Colbert, and neither of them engaged in conduct "nearly identical" to Colbert. Significantly, Colbert's discharge was not

related to either a drug test or sexual harassment, and neither Edock nor Lara had a record of performance issues comparable to Colbert. Further, at the time of the disciplinary actions taken against them, which was long before Colbert's discharge, both Edock and Lara were supervised by Harry Johnson, while Colbert was supervised by Chris Blue at the time of his discharge. Thus, neither Edock nor Lara can be compared to Colbert for purposes of his age discrimination claim, and no reasonable inference of age discrimination can be drawn from such a comparison.

*Fourth*, Colbert contends that age discrimination is somehow indicated because he had previously been given good reviews and had received raises. As Colbert admits, the only performance reviews he received during his employment were periodic reviews from his first supervisor, Harry Johnson. Colbert Depo. p. 79 lines 6-21, App. at 25. However, Chris Blue became Cleaning Manager in 2000, taking over the position previously held by Harry Johnson. Colbert Depo. p. 68 lines 6-22, App. at 20. At that time, it was management's view that the quality of the cleaning services at the Pavilion, for which Colbert as responsible, was in a state of decline. Greco Aff. ¶ 7, App. at 192-93. Colbert received no annual performance reviews from either Chris Blue or Keith Moore. Colbert Depo. p. 79 lines 6-21, App. at 25. Similarly, Colbert's raises came under his prior Harry Johnson, not Chris Blue. Colbert Depo. p. 278 line 23 - p. 279 line 3, App. at 129-30. Consequently, Colbert's prior reviews and raises under a previous supervisor are in no way probative of what his current supervisors thought of his performance at the time in question, nor do they suggest in any way that the decision to discharge Colbert was somehow motivated by age bias against him.

*Fifth*, Colbert's claim of age discrimination essentially boils down to little more than his own subjective belief that he was discharged because of his age. However, it is well-established that an employee's subjective belief that he suffered an adverse employment action because of discrimination,

without more, is not enough to survive summary judgment, especially when that belief encounters proof showing an adequate non-discriminatory reason for the employment action. See, e.g., Ray v. Tandem Computers, Inc., 63 F.3d 429, 435 (5th Cir. 1995) (stating that "bald assertions of discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions against the [plaintiff]"); Armendariz, 58 F.3d at 152-53; Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994); Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 119 (5th Cir. 1993); Little, 924 F.2d at 96. Thus, Colbert's subjective belief, regardless how genuine, that his age was the reason for his discharge is insufficient to raise a reasonable inference of discrimination and will not preclude summary judgment for Defendants.

## II.   Colbert cannot establish that he was denied the position of Purchasing Manager because of his age.

Colbert alleges that he was passed over for the position of Purchasing Manager in favor of someone younger. *First Amended Complaint* ¶ 23; *Plaintiff's Response to Interrogatory No. 13,* App. at 246. For the following reasons, there is no genuine issue of material fact regarding this claim, and Defendants are entitled to judgment as a matter of law.

### A.   Colbert's failure to hire claim is barred because he did not file a timely charge of discrimination for this claim.

Colbert's claim that he was not hired for the Purchasing Manager position fails as a matter of law because Colbert never asserted in his EEOC Charge that he was unlawfully passed over for a position. Colbert's failure to exhaust his administrative remedies precludes him from asserting this claim in this lawsuit.

Courts do not have jurisdiction to consider claims brought under the ADEA unless the aggrieved party has first exhausted his administrative remedies by filing a charge of discrimination with the EEOC. 29 U.S.C. § 626(d); National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of

San Antonio, 40 F.3d 698, 712 (5th Cir. 1994); Clark v. Kraft Foods, Inc., 18 F.3d 1278, 1279 (5th Cir. 1994); Williams v. Simmons Co., 185 F. Supp. 2d 665, 680-81 (N.D. Tex. 2001) (Solis, J.). The EEOC charge serves the primary purpose of providing the employer with notice of the alleged discrimination so that it may begin to activate appropriate conciliatory measures. Williams, 185 F. Supp. 2d at 680. The failure to assert a claim of discrimination in the EEOC charge or for it to be developed in the course of a reasonable investigation of that charge prohibits the claim from later being brought in a civil suit. National Ass'n of Gov't Employees, 40 F.3d at 711-12; Williams, 185 F. Supp. 2d at 681.

Neither the verbatim allegations of the EEOC charge nor the actual scope of the EEOC's investigation will determine the limits of a plaintiff's civil complaint. Clark, 18 F.3d at 1280; Williams, 185 F. Supp. 2d at 681. Instead, courts look at all of the information presented to the EEOC and determine what allegations would reasonably be expected to grow from the EEOC investigation. Clark, 18 F.3d at 1280 n. 9; Williams, 185 F. Supp. 2d at 681. Discrimination claims made in a civil action must be "like or related to the Charge's allegations" in order to survive dismissal. Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995). New allegations of discrimination that are not contained within a charge are limited to the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charge of discrimination. Dollis, 77 F.3d at 781. In other words, "allegations of new acts of discrimination, offered as the essential basis for the requested judicial review, are not appropriate." Ray v. Freeman, 626 F.2d 439, 442 (5th Cir. 1980), cert. denied, 450 U.S. 997 (1981).

Consequently, courts have dismissed cases for failure to exhaust administrative remedies where the plaintiff's charge of discrimination alleges different discrete acts than those contained in the lawsuit. See, e.g., Williams, 185 F. Supp. 2d at 680-81 (dismissing age discrimination claims not

raised in EEOC charge); <u>Patton v. Fujitsu Tech. Solutions, Inc.</u>, 2002 WL 31498996, *3-5 (N.D.

Tex. Nov. 7, 2002) (Fish, C.J.) (dismissing ADEA claims); <u>Abraham v. Community Hosp. of</u>

<u>Mesquite</u>, 19 F. Supp.2d 660 (N.D. Tex. 1997) (summary judgment granted on failure-to- promote

claim where EEOC charge complained of different promotion); <u>Hershey v. Praxair, Inc.</u>, 948 F. Supp.

29, 31-32 (S.D. Tex. 1996).

It is well-established that failure-to-hire and failure-to-promote claims—such as that asserted

by Colbert here—are ***not*** reasonably related to a previously filed EEOC charge complaining only of

a discriminatory discharge. <u>See, e.g.</u>, <u>Chester v. American Telephone and Telegraph Co.</u>, 907

F. Supp 982, 987 (N.D. Tex. 1994) ("A decision to discharge an employee and a decision not to hire

that employee for a different position are separate and distinct events; thus, a failure to transfer or hire

charge is beyond the scope of an EEOC charge that alleges only a discriminatory discharge."); 

<u>Aleman v. State of Texas</u>, 803 F. Supp. 10 (S.D. Tex. 1992); <u>Moncada v. El Paso Natural Gas Co.</u>, 

1985 WL 2537 *1 (W.D. Tex. 1985); <u>see also</u> <u>Sauzek v. Exxon Coal USA, Inc.</u>, 202 F.3d 913, 920

(7th Cir. 2000); <u>Hargett v. Valley Federal Sav. Bank</u>, 60 F.3d 754, 764 (11th Cir. 1995); <u>Miller v.</u>

<u>Walker Division of Butler Mfg. Co., Inc.</u>, 577 F. Supp. 948, 951 (S.D. W.Va. 1984); <u>Pickney v.</u>

<u>American District Telegraph Co.</u>, 568 F. Supp. 687, 691-92 (E.D. Ark. 1983); <u>Abraham v. Field</u>

<u>Enterprises</u>, 511 F. Supp. 391 (N.D. Ill. 1980); <u>Ferrell v. Ass'n of Central Oklahoma Governments</u>,

481 F. Supp 125, 127-28 (W.D. Okla. 1978); <u>Wilson v. Allied Chemical Corp.</u>, 456 F. Supp. 249,

253-54 (E.D. Va. 1978).

In this case, the only adverse employment action raised in Colbert's EEOC charge is his

complaint that he was wrongfully discharged on October 8, 2000. Colbert Depo. p. 315 line 19 - p.

316 line 21, Ex. 36, App. at 134-35, 159. There is no allegation in the Charge that Colbert was not

hired for or promoted to any other position <u>Id</u>. This is the only charge that Colbert filed with the

EEOC. Colbert Depo. p. 317 lines 1-3, App. at 136. Colbert's failure-to-hire claim is factually discrete, remote in time, and unrelated to the discharge raised in his EEOC charge. Based on the sole claim described in the charge, the EEOC could not reasonably have been expected to investigate whether Colbert was denied a position due to his age, nor could Defendants have been put on notice of the claim so that they could engage in conciliatory activities. Therefore, Colbert's EEOC charge does not provide a basis for a judicial complaint alleging that he was wrongfully denied the position of Purchasing Manager. Consequently, because Colbert failed to exhaust his administrative remedies regarding this claim, it must be dismissed.

**B.    Colbert cannot establish a prima facie case because he did not apply for, and was not qualified for, the position of Purchasing Manager.**

To establish a prima facie case of a failure to hire claim under the ADEA, a plaintiff must provide evidence that she: (1) he is a member of a protected class, (2) that he sought and was qualified for an available employment position, (3) that he was rejected for that position, and (4) that after he was rejected, the defendant promoted, hired, or continued to seek applicants with his qualifications. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir.1996). Colbert cannot establish a prima facie case because: (1) he did not apply for the position, and (2) he was not qualified for the position.

*First,* Colbert did not apply for the position. Jeff Greco was the person responsible for filling the Purchasing Manager position, and Colbert never applied with Greco or made him aware of his interest in the position. Greco Aff. ¶ 13, App. at 193; Colbert Depo. p. 250 lines 14-16, App. at 105. Although Colbert says he gave his resume to, and discussed the position with Jeff Hooper, Director of Administration, Hooper was not the person authorized to receive applications or fill the position, and Hooper had left Lone Star Park by the time the position was filled. Greco Aff. ¶ 11. App. at 193;

Colbert Depo. p. 250 line 21- p. 251 line 10, App. at 105-06. Thus, Colbert cannot show that he applied for the position sufficient to make out a prima facie case.

*Second*, even had he properly applied, Colbert was not qualified for the position. Greco Aff. ¶¶ 12-13, App. at 193. The qualifications for which Greco was looking in filling the Purchasing Manager position included previous substantial, relevant purchasing experience, including a familiarity with the types of things purchased at Lone Star Park, knowledge of local vendors, and known integrity and standing in the business community. Greco Aff. ¶ 12, App. at 193. Colbert admits he has no knowledge of the required qualifications were for the job. Colbert Depo. p. 249 line 21 - p. 250 line 13, App. at 104-05. Thus, Colbert cannot show that he was minimally qualified for the position. Because Colbert cannot demonstrate that he applied for and was qualified for the Purchasing Manager position, he cannot make out a prima facie case, and summary judgment is warranted. See, e.g., Haynes v. Pennzoil Co., 207 F.3d 296, 300-301 (5th Cir. 2000) (affirming summary judgment where plaintiff was unable to show he applied for and was qualified for the positions forming the basis of his failure to hire claim).

C.    **Colbert cannot establish that the reasons for not selecting him as Purchasing Manager are pretexts for age discrimination.**

The summary judgment evidence demonstrates that Colbert was not hired as Purchasing Manager for legitimate, non-discriminatory reasons, specifically, that Colbert never applied to Jeff Grecor the hiring manager, and in any event the person selected, Jim Bledsoe, was far more qualified than Colbert, in that Bledsoe had significant purchasing experience relevant to Lone Star Park's operations as well as prominent political and community standing, which Colbert did not have. Greco Aff. ¶¶ 10-17, App. at 193-94.

**Defendants' Brief in Support of Motion for Summary Judgment - Page 26**

Dallas3 798542 v 2, 20554.00033

There is no evidence that the reasons for selecting Bledsoe instead of Colbert are pretexts for age discrimination. As noted above, it is undisputed Colbert did not apply for the position with Jeff Greco, the hiring manager. Further, Colbert has only "an assumption" that he was not hired because of his age, and he admits he has no facts that he was not hired due to his age. Colbert Depo. p. 255 line 19 - p. 256 line 6, App. at 108-09.[4]

Moreover, in order to establish a fact issue with respect to his failure to hire claim, Colbert must show he was "*clearly better qualified*" than the person who was ultimately selected for the position. Walther v. Lone Star Gas Co., 952 F.2d 119, 123 (5th Cir. 1992); see also Nichols v. Loral Vought System Corp., 81 F.3d 38, 42 (5th Cir. 1996). The Fifth Circuit has explained that:

> the judicial system is not as well suited by training and experience to evaluate qualifications in other disciplines as are those persons who have trained and worked for years in that field ... . Thus, *unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face,* we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question.

Deines v. Texas Dept. of Health and Reg. Svcs., 164 F.3d 277, 280 (5th Cir. 1999) (internal citation and quotations omitted, emphasis added).

Colbert does not dispute Bledsoe's qualification, since other than knowing that Bledsoe served the Grand Prairie City Council, Colbert admits he has no knowledge of Bledsoe's background, such as his education and work experience. Colbert Depo. p. 254 line 13 - p. 255 line 10, App. at 107-08. Colbert admits he does not know whether he should have been picked for the position instead of Bledsoe, and he admits he does not know whether he was more qualified for the position

---

[4]Although Hooper was not the person filling the position, Colbert also concedes that his age was not mentioned during his discussion with Hooper about the position. Colbert Depo. p. 256 lines 3-10, App. at 109.

than Bledsoe.  Colbert Depo. p. 255 lines 11-18, App. at 108.  Consequently, Colbert cannot establish that he was clearly better qualified than Bledsoe for the Purchasing Manager position, nor does he have any other evidence sufficient to raise a reasonable inference that he was not selected for the position because of age.  Therefore, summary judgment is warranted.

### III.   Alternatively, Colbert can recover no damages after the October 23, 2002 sale of Lone Star Park at Grand Prairie.

Colbert seeks to recover as damages his alleged lost wages and benefits.  *First Amended Complaint* ¶¶ 8, 25.  In the event that summary judgment is not granted as to all claims, Defendants request partial summary judgment as to Colbert's claimed damages.  Specifically, Colbert's claimed damages, assuming liability were found, cannot be awarded beyond October 23, 2002.  Effective October 23, 2002, Lone Star Race Park, Ltd. sold the business of Lone Star Park at Grand Prairie, and as of that date Lone Star Race Park, Ltd. does not own or operate Lone Star Park at Grand Prairie and has no employees.  Greco Aff. ¶ 2, App. at 192.  Thus, even absent the alleged discrimination, Colbert would no longer be employed by, or receive wages from, Lone Star Race Park, Ltd.

Under these undisputed facts, even if liability were found, Colbert cannot recover lost pay or benefits after October 31, 2002.  See Tyler v. Union Oil Co. of Calif., 304 F.3d 379, 401-02 (5th Cir. 2002).  In Tyler, the Fifth Circuit Court of Appeals that the plaintiffs could not recover back pay and front pay under the ADEA after the date on which the defendant sold the business unit.  The court explained that after that date, even absent discrimination, the defendant would no longer have employed the plaintiffs or paid them wages, and the entity that bought the defendant's business unit was not the alter ego or agent of the defendant.  Id.  Accordingly, in the event that Colbert's claims

are not dismissed in their entirety, the Court should enter partial summary judgment limiting Colbert's potential recovery of damages under the ADEA to the time period prior to October 23, 2002.

### Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Summary Judgment, enter judgment dismissing Colbert's claims in their entirety with prejudice, and award Defendants such other and further relief to which it may be justly entitled.

Respectfully submitted,

Robert E. Sheeder
Texas Bar No. 18174300
Jason E. Winford
Texas Bar No. 00788693
**JENKENS & GILCHRIST**,
*A Professional Corporation*
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
(214) 855-4500 Telephone
(214) 855-4300 Facsimile

**ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of January, 2003, a true and correct copy of the foregoing document was forwarded via certified mail, return receipt requested upon Plaintiff's counsel of record, L. Bruce Lambert, 2500 Sherri Lane, Flower Mound, Texas 75028.